# AMERICAN ARBITRATION ASSOCIATION
**Commercial Arbitration Tribunal**

In the Matter of the Arbitration between

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated October 8, 2003 and having been duly sworn, and having duly heard the proofs and allegations of the Parties, in accordance with the Supplementary Procedures for Consumer-Related Disputes do hereby FIND and AWARD as follows:

## I. Statement of the Case

This arbitration arises out of the purchase of a used motor vehicle by the consumer Claimant Crissy M. Hall from the merchant Respondent JD Byrider-Cranston, Inc. The motor vehicle was financed, *via* an immediate assignment from JD Byrider-Cranston, Inc., by JD Byrider-Cranston and Venturecap Financial Group, LLC pursuant to a retail installment sales contract. The Respondents have a symbiotic relationship: they share office space; have overlapping management; and, JD Byrider assigns all of its finance agreements to Venturecap Financial Group while Venturecap finances only vehicles sold by JD Byrider. Given this identity of interest, this Award employs the terms "Respondent" and "Respondents" interchangeably when referring to either or both Respondents.

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

The original forum for this dispute was the United States District Court for the District of Rhode Island. In that action, the Claimant alleged the Respondent violated the federal Truth in Lending Act (TILA) when it financed the Claimant's motor vehicle. The Federal Court action was stayed pursuant to an arbitration clause in the sale documents. Thereafter, this arbitration was demanded.

The claims and counterclaims submitted are as follows:

- Claimant's allegation of Respondents' TILA violations;
- Claimant's allegation of Respondents' statutory breaches of warranty;
- Claimant's allegation of Respondents' common law fraud and negligent misrepresentation; and
- Respondents' allegations of book account, breach of contract and malicious use of process and abusive process.

The Award addresses each claim and counterclaim in *seriatim*. However, to the extent necessary, a finding of fact made in any one section shall be a fact found in all sections of the Award.

## II. <u>TILA Findings of Fact</u>

1. On October 8, 2003, the Claimant entered into a motor vehicle sales contract and retail installment contract and security agreement (RISC) with Respondent whereby the Claimant purchased and financed a 1998 Ford Taurus motor vehicle.

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

2. The RISC provided, *inter alia*, for payment of the principal amount of $8,294.15, interest at the rate of 17.95% per annum and a $2,582.17 cost of credit.

3. At the time of sale, the motor vehicle was more than five years old and its odometer read more than109,000 miles.

4. The closing ("Closing") of the purchase and sale of the motor vehicle included the production and signing of non-TILA and TILA documents and was, with the consent of the Claimant, audio and videotaped by the Respondents.

5. During the Closing, the Respondent utilized a multipart RISC which included TILA disclosures.

6. During the Closing, the Respondents' agent stated to the Claimant, "You'll get a copy of everything so okay I'm going to keep a copy in the folder."

7. During the Closing, the Respondents' agent stated to the Claimant, "First, this is a disclosure copy, um, by law we are required to give you an unsigned copy of this contract along with the signed copy. I'm just going to rip this one off and put it to the side."

8. During the Closing, the Respondents' agent stated to the Claimant, "I'm gonna put all this in here [into a file folder] for you."

9. During the Closing, Respondents' agent did not physically deliver the entire multipart RISC to the Claimant before the credit was extended.

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

10. During the Closing, Respondents' agent physically gave a portion of the multipart RISC to the Claimant before she signed it.

11. During or prior to her signing the RISC, the Claimant was free to leave the Closing at anytime with or without the RISC.

12. During the Closing, the Claimant signed the RISC.

13. For approximately one year, the Claimant made payments to the Respondent pursuant to RISC.

14. In approximately October 2004, the Claimant stopped making payments under the RISC.

15. At the time the Claimant stopped making payments in October 2004, the motor vehicle's odometer read approximately 136,000 miles.

## III. <u>TILA Conclusions of Law</u>

1. Congress enacted TILA as part of the Consumer Credit Protection Act to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to her and avoid the uninformed use of credit. 15 U.S.C. §1601(a).

2. TILA requires a creditor to disclose information relating to the use of credit including finance charges, annual percentage rate of interest and borrower's rights. 15 U.S.C. §1631-1632, 1635, 1637-1639.

3. TILA provides for civil liability for any creditor who fails to meet the requirements of the act. 15 U.S.C. §1640.

4. With respect to the timing of TILA credit disclosures, TILA states, *inter alia*:

> (1) . . . the disclosures required under subsection (a) of this section shall be made before the credit is extended. . . .

5. The Federal Reserve Board has issued regulations implementing TILA which are referred to as Regulation Z. Regulation Z provides that the creditor shall make the disclosures required by TILA clearly and conspicuously before consummation of the transaction. 12 C.F.R. §226.17(b).

6. "Consummation" means the time that a consumer becomes contractually obligated on the credit application. 12 C.F.R. § 226.2(a)(13).

7. Although TILA disclosures must be made before consummation of the transaction, there is no requirement that a specific amount of time elapse from the disclosures until consummation. 12 C.F.R. §226, Supp. 1, at 17(b).

8. TILA does not require physical delivery of all parts of a multipart RISC from a creditor to a consumer before the credit is extended and the transaction consummated. 15 U.S.C. 1638(b)(1).

9. TILA does not require the creditor to affirmatively inform the consumer she is

free to leave a closing with or without an unsigned RISC any time before the credit is extended and consummation of the transaction. 15 U.S.C. 1638(b)(1).

10. Required TILA disclosures were made by the Respondent to the Claimant before the credit was extended to the Claimant. Although it was moments, the Claimant had the disclosures in her possession before she committed to the credit and before the credit was extended to her and the transaction consummated. 15 U.S.C. §1638(b)(1).

11. Respondent did not violate TILA with respect to form and timing of required TILA disclosures to the Claimant. 15 U.S.C. 1638(b)(1).

12. I find as a matter of law that the agreed contract price of the motor vehicle at issue is not violative of any part of TILA.

13. For the above-stated reasons, the Claimant shall be awarded nothing on her TILA claims.

## IV. <u>Warranty Claims Findings of Fact</u>

1. The 1998 Ford Taurus was inspected by Respondents' employees and repairs necessary to render the vehicle reasonably safe were made prior to its sale to the Claimant.

2. Prior to the sale of the motor vehicle to the Claimant, the vehicle passed an inspection by a non-party Rhode Island service station pursuant to Rhode Island law.

3. At or about the time of the purchase of the motor vehicle by the Claimant, the vehicle passed an inspection by Nationwide Insurance Company.

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

4. At the time of purchase and sale of the motor vehicle on October 8, 2003, the motor vehicle was fit for the ordinary purposes for which such goods are used, *e.g.*, transportation of passengers and their goods.

5. Once under Claimant's control, the motor vehicle was driven approximately 30,000 miles before the date of the hearing of this arbitration.

## V. Warranty Claims Conclusions of Law

1. The 1998 Ford Taurus was merchantable at the time it left the control of the Respondent and, as such, the Respondent did not breach the implied warranty of merchantability. G.L. 1956 § 6A-2-314.

2. The 1998 Ford Taurus was merchantable at the time it left the control of the Respondent and, as such, the Respondent did not violate the Magnuson-Moss Warranty Act. 15 U.S.C. §2301, *et. seq.*

3. For the above-stated reasons, Claimant shall be awarded nothing on her warranty claims.

## VI. Fraud and Negligent Misrepresentation Findings of Fact

1. The Claimant did not want to purchase a motor vehicle that had been in a prior accident.

2. The motor vehicle had been in two accidents prior to being sold to the Respondent. The first was on April 24, 2000. The impact was minor. The vehicle sustained

minor cosmetic damage only. The vehicle was involved in a second accident on or about May 30, 2002. This accident was minor to medium. There was no structural damage to the vehicle. The prior owner drove the vehicle for approximately one year after the second accident before he traded it in, without any problems.

3. The Respondents neither actually knew, nor ought they have known, that the vehicle was in two prior accidents when Respondent purchased it from a Brockton, MA wholesale dealer.

4. The Respondent purchased the 1998 Ford Taurus from the Brockton wholesaler with full recourse, meaning the wholesale dealer would unconditionally accept return of the vehicle from Respondent after inspection.

5. Respondents' agents made no representation to the Claimant at or before the time of sale concerning prior accidents, condition or safety of the 1998 Ford Taurus that the Respondent's agents knew were false when made or made recklessly without regard to whether true or false.

6. Respondents' agents made no false representation or provided false information to the Claimant at or before the time of sale concerning prior accidents, condition or safety of the 1998 Ford Taurus under circumstances in which the Respondents' agents ought to have known of its falsity.

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

## VII. Fraud and Negligent Misrepresentation Conclusions of Law

1. In order to establish a prima facie case of common law fraud under Rhode Island law, a party having the burden of proof must prove that the liable party made a false representation of a material fact, intending thereby to induce plaintiff to rely thereon, and that the plaintiff justifiably relied thereon to her damage. Zaino v. Zaino, 818 A.2d 630, 638 (R.I. 2003).

2. In order to establish a prima facie case of common law negligent misrepresentation under Rhode Island law, a party having the burden of proof must prove that the liable party made a misrepresentation of a material fact, that the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or under circumstances where he ought to have known of its falsity, that the representor must intend the representation to induce the other party to act on it, and damage as a result to the party acting in justifiable reliance on the misrepresentation. Zarrella et al. v. Minnesota Mutual Life Ins. Co., 824 A.2d 1249 (R.I. 2003) (quoting Mallette v. Children's Friend and Service, 661 A.2d 67 (R.I. 1995)).

3. The Claimant has not proved by a preponderance of the credible evidence that any Respondent's agent made a false representation of any material fact at or before the time of sale, concerning prior accidents, condition or safety of the 1998 Ford Taurus motor vehicle.

4. The Claimant has not proved by a preponderance of the credible evidence that any Respondent's agent made a misrepresentation of any material fact at or before the time of sale, concerning prior accidents, condition or safety of the 1998 Ford Taurus motor vehicle.

5. For the above-stated reasons, the Claimant shall be awarded nothing on her fraud and negligent misrepresentation claims.

## VIII. Findings of Fact on Counterclaims for Book Account and Breach of Contract

1. The outstanding balance at the time the Claimant ceased making payments in or about October 2004 to the Respondents under the RISC was $6,248.64.

2. At the time of the hearing of this arbitration, the total outstanding amount due from the Claimant to the Respondent under the RISC was $7,511.63.

## IX. Book Account and Breach of Contract Conclusions of Law

1. The RISC is a valid and enforceable contract by and between the Claimant and the Respondent.

2. The Claimant breached the RISC when she ceased making payments to the Respondent approximately one year after purchase of the 1998 Ford Taurus.

3. As a direct and proximate result of the breach of contract by the Claimant, the Respondent has suffered damages at the time of the hearing of this arbitration in the amount of $7,511.63.

4. In addition, the Claimant is liable to the Respondent for continued interest from and after the date of the hearing at the rate of 17.95% per annum until paid or otherwise satisfied.

5. I decline to award the Respondents their costs or attorney's fees on the book account and breach of contract counterclaims.

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

6. Under Count I and Count II of the Counterclaim for book account and breach of contract, I award the Respondents a total single sum of $7,511.63 plus interest going forward from the date of the arbitration hearing at the contract (RISC) rate.

## X. Malicious Use of Process and Abuse of Process

1. I find as a matter of law that the Claimant did not institute any law suit or this arbitration against the Respondent for an ulterior or wrongful purpose for which any proceeding was not designed. The Claimant's actions were not malicious and were not for an end other than which any proceeding was designed to accomplish. As such, the Respondents have not met their burden of proof under Count III of their Counterclaim for malicious use of process and abuse of process.

2. For the above-stated reasons, the Respondents are awarded nothing on their judicial process counterclaims.

## XI. Award

Accordingly, I Award as follows:

1. Claimant shall take nothing on her TILA claims.
2. Claimant shall take nothing on her warranty claims.
3. Claimant shall take nothing on her fraud and negligent misrepresentation claims.
4. Respondents are awarded a total single sum of Seven Thousand Five Hundred Eleven Dollars and Sixty-Three Cents ($7,511.63) plus interest at the contract

Re: 11 188 E 01390 05

Crissy M. Hall

-and-

JD Byrider-Cranston, Inc. and Venturecap Financial Group, LLC

(RISC) rate going forward on their book account and contract counterclaims with no costs or attorney's fees awarded.

5. Respondents shall take nothing on their malicious use of process and abuse of process counterclaims.

6. Each party shall bear its own attorney's fees and costs of the arbitration except a noted below.

The administrative fees of the American Arbitration Association totaling $1,050.00 shall be borne entirely by the JD Byrider. The compensation and expenses of the Arbitrator totaling $775.00 shall be borne as follows: 48% by Claimant, 52% by JD Byrider.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

December 12, 2005
Date

Steven B. Boris

I, Steven B. Boris, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

December 12, 2005
Date

Steven B. Boris